IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Allstate Insurance Company,<br><br>                Plaintiff,<br><br>vs.<br><br>Patricia Damico and Lenna Lucas, individually and on behalf of all others similarly situated, Joshua and Brettany Buetow, Edward and Sylvia Dengg, Jonathan and Theresa Douglass, Anthony and Stacey Ray, Danny and Ellen Davis Morrow, Czara and Chad England, Bryan and Cynthia Camara, and Matthew Collins, Lennar Carolinas, LLC, Civil Site Environmental, and Spring Grove Plantation Development, Inc.<br>                Defendants. | Civil Action No.:  **2:20-cv-2531-BHH**<br><br>**COMPLAINT**<br><br>(Declaratory Judgment)<br><br>(Non-Jury) |

Plaintiff Allstate Insurance Company ("Allstate"), by and through its undersigned counsel, complaining of the above-named Defendants, respectively alleges and would show as follows:

**NATURE OF ACTION**

1. This action is brought pursuant to the provisions of the Uniform Declaratory Judgment Act, as codified in 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, there is a real and justiciable controversy between the parties, the parties are interested parties, and Allstate asks the Court to declare the rights and obligations of the parties.

2. The Court's declaration will confer certainty on the parties and serve the interests of justice.

**PARTIES**

3. Allstate is an insurance company organized and existing under the laws of the state of Illinois, with its principal places of business in the state of Illinois. Allstate issues insurance policies in South Carolina and insures interests located within South Carolina.

4. Upon information and belief, Patricia Damico ("Damico") is a citizen of the state of South Carolina and resides in Berkeley County, South Carolina.

5. Upon information and belief, Lenna Lucas ("Lucas") is a citizen of the state of South Carolina and resides in Berkeley County, South Carolina.

6. Upon information and belief, Joshua and Brettany Buetow ("the Buetows") are citizens of the state of South Carolina and reside in Berkeley County, South Carolina.

7. Upon information and belief, Edward and Sylvia Dengg ("the Denggs") are citizens of the state of South Carolina and reside in Berkeley County, South Carolina.

8. Upon information and belief, Jonathan and Theresa Douglass ("the Douglasses") are citizens of the state of South Carolina and reside in Berkeley County, South Carolina.

9. Upon information and belief, Anthony and Stacey Ray ("the Rays") are citizens of the state of South Carolina and reside in Berkeley County, South Carolina.

10. Upon information and belief, Danny and Ellen Davis Morrow ("the Morrows") are citizens of the state of South Carolina and reside in Berkeley County, South Carolina.

11. Upon information and belief, Czara and Chad England ("the Englands") are citizens of the state of South Carolina and reside in Berkeley County, South Carolina.

12. Upon information and belief, Bryan and Cynthia Camara ("the Camaras") are citizens of the state of South Carolina and reside in Berkeley County, South Carolina.

13. Upon information and belief, Matthew Collins ("Collins") is a citizen of the state of South Carolina and resides in Berkeley County, South Carolina. The individual defendants are collectively referred to as "Underlying Plaintiffs."

14. Upon information and belief, Lennar Carolinas, LLC ("Lennar") is a limited liability company organized and existing under the laws of the state of Delaware and conducts business in

South Carolina.

15. Upon information and belief, Spring Grove Plantation Development, Inc. ("Spring Grove") is a corporation organized and existing under the laws of the state of South Carolina and conducts business in South Carolina.

16. Upon information and belief, Civil Site Environmental ("Civil Site") is a corporation organized and existing under the laws of the state of South Carolina and conducts business in South Carolina.

17. Jurisdiction exists because there is complete diversity of citizenship between Allstate and the Defendants, and the amount in controversy, including the potential costs of defending and indemnifying Civil Site in the underlying dispute, potentially exceeds $75,000.00. This Court thus has jurisdiction based upon 28 U.S.C. § 1332(a).

18. Venue is appropriate under 28 U.S.C. § 1391 because this lawsuit seeks a declaration from the Court interpreting the terms of insurance policies issued to Civil Site as an insured with regard to its work performed in Charleston County, South Carolina.

## FACTUAL BACKGROUND

**A.    Underlying Lawsuit**

19. This declaratory judgment action arises out of claims regarding alleged construction defects specifically related to and arising out of the performance of certain construction work by Civil Site.

20. On October 30, 2014, Underlying Plaintiffs filed a Summons and Complaint in the Court of Common Pleas for Berkeley County, South Carolina, Case No. 2014-CP-08-2424.[1] The

---

[1] The original Summons and Complaint included some of the individual defendants referred to as the Underlying Plaintiffs, and the remaining individuals were added in the First Amended Complaint. The original Summons and Complaint identified the Plaintiffs in the caption as derivatively acting on behalf of the Spring Grove Plantation Homeowners Association ("HOA").

3

First Amended Complaint was filed on November 23, 2015. A true and correct copy of the First Amended Complaint is attached as **Exhibit A**, the allegations of which are incorporated herein by reference.

21. According to the pleadings, the Underlying Plaintiffs all are owners of homes in a residential community known as The Abbey at Spring Grove Plantation located in Berkeley County, South Carolina.

22. According to the allegations in the First Amended Complaint, Civil Site served as the professional civil engineer and designer for the development of the project and provided civil drawings for the project.

23. Civil Site contracted with Lennar for this project. The first contract is dated July 27, 2011, and the scope of work is identified as "Due Diligence." The second contract is dated April 1, 2013, and the scope of work is identified as "engineering, permitting and overseeing construction for rear yard drainage for lots 4-17, this includes design and meetings with Berkeley County for approval of proposed system." Copies of the contracts are attached as **Exhibit B**.

24. In the First Amended Complaint, Underlying Plaintiffs contend that construction defects have been discovered after an inspection revealed major problems and deficiencies, such as lack of proper foundation work; lack of proper foundation slabs; structural damage to the homes; water damage resulting from defects; improper grading and drainage; improper roofing; and improper windows and installation of some.

25. The Underlying Plaintiffs further allege that the design, grading deficiencies, and construction defects to the project include, but not limited to, the following: water accumulation on the property of the Plaintiffs and homeowners; improper grading of the property of the Plaintiffs and

---

The First Amended Complaint did not include the HOA in the caption. Civil Site was not named as a defendant in the original complaint, but was added as a defendant in the First Amended Complaint.

homeowners; improper installation of drainage pipes; deterioration of the subject structures due to the drainage issues; improper foundation; improper flashing; and water intrusion.

26. The First Amended Complaint states that due to these actions, the Underlying Plaintiffs are facing significant damage repairs, deteriorating property, and significant and immediate expenses for investigation and destructive testing. The Underlying Plaintiffs are claiming actual, incidental, consequential, and special damages, including loss of use and diminution in value, as well as requesting punitive damages and attorneys' fees.

27. The First Amended Complaint includes the following causes of action against Civil Site: Negligence, Gross Negligence, Negligent Misrepresentation, Breach of Implied Warranties, and Unfair Trade Practices Act.

28. Lennar and Spring Grove asserted cross claims against Civil Site in the Lawsuit. Lennar alleges that Civil Site's work included civil engineering and design services, including preparing the civil engineering plans, drawings, documents, and specifications, to include grading and drainage plans, drawings and specifications for the project. Lennar's cross claim includes the following causes of action: indemnity, negligence, breach of implied warranties, breach of contract, and nondelegable duty/ vicarious liability. Spring Grove's cross claims include causes of action for breach of contract, contractual/equitable indemnity, breach of warranty, negligence, and contribution. True and correct copies of Lennar's cross claims and Spring Grove's cross claims are attached as **Exhibit C and D**, the allegations of which are incorporated herein by reference.

29. Allstate is currently defending Civil Site under a full reservation of rights in the Lawsuit.

**B.    The Policies**

30. Allstate issued the following Business Owners insurance policies to Civil Site: Policy No. 648127341 for the December 19, 2013 to December 19, 2014 policy period; and Policy No. 648127341 for the December 19, 2014 to December 19, 2015 policy period, which was cancelled effective May 1, 2015. Copies of the policies are attached as **Exhibit E**, and **Exhibit F**, the terms and conditions of which are incorporated herein by reference.

31. The 2013-2104 policy issued by Allstate has the following limits: Per Occurrence Limit - $1,000,000; Other Than Product-Completed Operations Aggregate Limit - $2,000,000, and Products-Completed Operations Aggregate Limit - $2,000,000. Per endorsement no. 1, which was effective February 17, 2014, the liability limit was changed from $1,000,000 to $2,000,000 and the liability medical aggregate limit has been changed from $2,000,000 to $4,000,000.

32. The 2014-2015 policy issued by Allstate has the following limits: Per Occurrence Limit - $2,000,000; Other Than Product-Completed Operations Aggregate Limit - $4,000,000, and Products-Completed Operations Aggregate Limit - $4,000,000.

33. A justiciable controversy exists between the parties in this action concerning whether coverage exists under the policies for the damages as alleged in the Lawsuit.

34. Allstate is entitled to a judicial declaration that the policies issued to Civil Site do not provide coverage for the allegations raised in the Lawsuit, and therefore, Allstate has no duty to defend or indemnify in connection with the Lawsuit.

35. Additionally, Allstate is entitled to a judicial declaration that it is entitled to recover the costs of the defense borne by Allstate through the date upon which Allstate obtains a judicial declaration that it owed no duty of defense regarding the claims made in the Lawsuit.

**FOR A FIRST DECLARATION**
**(Professional Services Exclusion)**

36. The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

37. The policies include the Professional Services exclusion, which states in part as follows:

> **B.    Exclusions**
> **1.    Applicable To Business Liability Coverage**
>
> This insurance does not apply to:
>
> \*\*\*\*
>
> **j.    Professional Services**
>
> "Bodily injury", "property damage" or "personal and advertising injury" caused by the rendering or failure to render any professional service. This includes but is not limited to:
>
> \*\*\*\*
>
> **(2)** Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;
>
> **(3)** Supervisory, inspection or engineering services;
>
> \*\*\*\*
>
> This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the . . . "property damage", . . . involved the rendering or failure to render of any professional service.

38. Allstate contends and would show that the terms of the Professional Services exclusion would apply to all claims asserted against Civil Site.

39. Accordingly, Allstate seeks a declaration from this Court that it has no defense or indemnification obligations under the policies in connection with any of the claims alleged in the Lawsuit because the Professional Services exclusion applies to bar coverage.

## FOR A SECOND DECLARATION
### (Lack of "Property Damage" or "Occurrence")

40.     The policies, pursuant to the insuring agreement for the Business Liability coverage under Section II - LIABILITY, provide coverage, subject to any applicable exclusion(s), for "property damage" that is caused by an "occurrence" and "occurs during the policy period."

41.     The policies, as set forth more specifically therein, define "property damage" in relevant part to mean "physical injury to tangible property, including all resulting loss of use of that property…or loss of use of tangible property that is not physically injured."

42.     The policies, as set forth more specifically therein, define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

43.     Under the terms and conditions of the policies, Allstate contends and would show that some or all of the allegations asserted against Civil Site raised in the Lawsuit do not constitute "property damage" or an "occurrence" as defined by the policies.

44.     Accordingly, Allstate seeks a declaration from this Court that it has no defense or indemnification obligations under the policies in connection with the claims alleged in the Lawsuit because the claims do not constitute "property damage" or an "occurrence" as defined by the policies.

45.     Further, Allstate seeks a declaration from this Court that it has no defense or indemnification obligations under the policies in connection with the claims alleged in the Lawsuit because the claimed property damage did not occur during the policy periods.

## FOR A THIRD DECLARATION
### (Knowledge of Property Damage Prior to Policy Period)

46. The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

47. The policies provide under the Business Liability coverage that the insurance applies to "property damage" only if "[p]rior to the policy period, no insured . . . knew that the . . . 'property damage' had occurred, in whole or in part.  If such a listed insured or authorized 'employee' knew, prior to the policy period, that the . . . 'property damage' occurred, then any continuation, change or resumption of such . . . 'property damage' during or after the policy period will be deemed to have been known before the policy period."

48. The Lawsuit was originally filed on October 30, 2014.  Allstate seeks a declaration from this Court that it has no defense or indemnification obligations under the policies in connection with the claims alleged in the Lawsuit because the Civil Site knew, prior to the policy period, that property damage occurred.

## FOR A FOURTH DECLARATION
### (Standard Policy Exclusions)

49. The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

50. Section II—Liability, B. Exclusions, 1. Applicable to Business Liability Coverage of the policies contains certain standard policy exclusions, namely:  "b. Contractual Liability," "k. Damage to Property,"  "m. Damage To Your Work," "n. Damage To Impaired Property or Property Not Physically Injured," and "o. Recall Of Products, Work or Impaired Property."

51. The policies provide, in pertinent part, as follows

**B.  Exclusions**
    **1.  Applicable To Business Liability Coverage**

This insurance does not apply to:

    **b.**    **Contractual Liability**

9

> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
> 
> **(1)** That the insured would have in the absence of the contract or agreement; or
> 
> **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
> 
> **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
> 
> **(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\*\*\*\*

**k.   Damage To Property**

"Property damage" to:
\*\*\*\*

> **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
> 
> **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(3)**, **(4)**, **(5)**, and **(6)** of this exclusion do not apply to liability assumed under a side-track agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

\*\*\*\*

10

    **m.**    **Damage To Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

            This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.

    **n.**    **Damage To Impaired Property Or Property Not Physically Insured**
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
    **(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

    **(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

            This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

    **o.**    **Recall Of Products, Work Or Impaired Property**
Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall inspection, repair, replacement, adjustment, removal or disposal of:
    **(1)**    "Your product;"
    **(2)**    "Your work;" or
    **(3)**    "Impaired property;"

            If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of known or suspected defect, deficiency, inadequacy or dangerous condition in it.

52.    The above-referenced policy exclusions provide that coverage is not available under the policies to the extent that the damages at issue in the Lawsuit fall within any of these exclusions.

Accordingly, the policies afford no coverage for the damages alleged in the Lawsuit, and Allstate does not owe a duty to defend or indemnify.

**FOR A FIFTH DECLARATION**
**(Duty To Cooperate)**

53.     The allegations contained in the paragraphs above, to the extent not inconsistent herewith, are incorporated as if fully stated herein.

54.     Under Section II – LIABILITY, E. Liability And Medical Expenses General Conditions, the policies state as follows:

> **2. Duties in the Event of Occurrence, Offense, Claim or Suit**
>
> a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
>    (1) How, when and where the "occurrence" or offense took place;
>    (2) The names and addresses of any injured persons and witnesses; and
>    (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> b. If a claim is made or "suit" is brought against any insured, you must:
>    (1) Immediately record the specifics of the claim or "suit" and the date received; and
>    (2) Notify us as soon as practicable.
>
>    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
> c. You and any other involved insured must:
>    (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>    (2) Authorize us to obtain records and other information;
>    (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
>    (4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

    d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

55. Civil Site failed to timely provide notice of the Lawsuit to Allstate.

56. Civil Site's failure to comply with the conditions of coverage as required under the policies has materially and substantially prejudiced Allstate's ability to participate in the defense of the Lawsuit.

57. Accordingly, Allstate seeks a declaration from this Court that coverage under the policies is excluded based on Civil Site's failure to meet the conditions for coverage.

**WHEREFORE,** Allstate prays that the Court enter an Order declaring the rights of the parties as follows:

    a. The policies issued by Allstate to Civil Site do not provide coverage for and/or exclude from coverage the claims asserted in connection with the Lawsuit;

    b. Allstate has no duty to defend or indemnify in connection with the claims asserted in the Lawsuit; or in the alternative,

    c. The policies provide coverage for only some and/or exclude from coverage some of the claims asserted/damages alleged in the Lawsuit;

    d. Allstate is entitled to recover the costs of the defense borne by Allstate through the date upon which Allstate obtains a judicial declaration that it owed no duty of defense regarding the claims made in Lawsuit; and

    e. Further, Allstate prays that the Court award the costs of the action and any such other and further relief as this Court shall deem just and proper.

GALLIVAN, WHITE & BOYD, P.A.

By: s/Shelley S. Montague
Shelley S. Montague, Fed Bar # 07587
Post Office Box 7368
Columbia, South Carolina 29202
Telephone:  803-779-1833
Facsimile:   803-779-1767
smontague@GWBlawfirm.com

*Attorneys for Allstate Insurance Company*

Columbia, South Carolina
July 6, 2020

14