# EXHIBIT A

STATE OF SOUTH CAROLINA                    ) IN THE COURT OF COMMON PLEAS
                                           ) NINTH JUDICIAL CIRCUIT
COUNTY OF BERKELEY                         ) CASE NO: 2014-CP-08-02424

Patricia   Damico   and   Lenna   Lucas,   )
individually and on behalf of all others   )
similarly situated, Joshua and Brettany    )
Buetow,   Edward   and   Sylvia   Dengg,   )
Jonathan     and     Theresa     Douglass, )
Anthony and Stacey Ray, Danny and          )    **RULE 23 SOUTH CAROLINA RULES OF CIVIL**
Ellen Davis Morrow, Czara and Chad         )          **PROCEDURE CLASS ACTION**
England, Bryan and Cynthia Camara, and     )
Matthew Collins.                           )
                                           )         **FIRST AMENDED COMPLAINT**
                                           )            **(Jury Trial Demanded)**
                Plaintiffs,                )                **(Class Action)**
                                           )         **(Construction Defects)**
        vs.                                )                 **(Verified)**
                                           )
Lennar Carolinas, LLC, Spring Grove        )
Plantation Development, Inc., Manale       )
Landscaping, LLC, Super Concrete of SC,    )
Inc.   Southern   Green,   Inc.,    TJB    )
Trucking/Leasing,   LLC,   Paragon   Site  )
Constructors,     Inc.,     Civil     Site )
Environmental,    and    Rick    Bryant,   )
individually.                              )
                                           )
                                           )
                Defendants.                )
_____        )
                                           )
Lennar Carolinas, LLC                      )
                                           )
                Third-Party Plaintiff,     )
                                           )
        vs.                                )
                                           )
Super Concrete of SC, Inc. Southern        )
Green, Inc., and TJB Trucking/Leasing,     )
LLC,                                       )
                                           )
                Third-Party Defendants.    )

1

The Plaintiffs, Patricia Damico and Lenna Lucas, as Class Representatives and the above-named Plaintiffs (hereinafter collectively referred to as "Plaintiffs"), individually and as a class of similarly situated owners of homes in a residential community named the Abbey at Spring Grove Plantation complaining of the above-mentioned Defendants, allege and state as follows:

1.      Plaintiffs Lenna Lucas and Patricia Damico are citizens and residents of Berkeley County, South Carolina, who at all times relevant hereto live in a residential community known as The Abbey at Spring Grove Plantation, located in Berkeley County, South Carolina. Plaintiffs Lenna Lucas and Patricia Damico further allege and state that they are bringing this action pursuant to Rule 23, SCRCP, as representing a class composed of each and every home owner in The Abbey at Spring Grove Plantation, and that:

   a. The class is so numerous that joinder of all members is impracticable;

   b. There are questions of law and fact common to the class;

   c. The claims of the Plaintiffs, Lenna Lucas and Patricia Damico, are typical of the claims of the class;

   d. The Plaintiffs Lenna Lucas and Patricia Damico will fairly and adequately protect the interest of the class; and

   e. The amount in controversy exceeds One Hundred Dollars ($100.00) for each member of the class.

2.      Plaintiffs Patricia Damico, Lenna Lucas, and other similarly situated home owners, own homes in of The Abbey.

3.      Pursuant to the common law of South Carolina and Rule 23 of the South Carolina Rules of Civil Procedure ("SCRCP"), Plaintiffs Patricia Damico and Lenna Lucas bring this action both individually and as a proposed class action against the Defendants on behalf of themselves and

2

all other similarly situated persons and entities, that own homes within The Abbey (hereinafter

referred to collectively as the "Class"). The Class is more particularly defined as follows:

All persons and/or entities that own homes/property within The Abbey.

Excluded from the Class are:

a. Any Judge presiding over this action and members of their families;

b. Defendants and any entity in which Defendants have a controlling interest or which have a controlling interest in Defendants and Defendants' current or former employees investors, members, or officers;

c. Any former owner of a home; and

d. All persons who properly execute and file a timely request for exclusion from the Class.

4.      As representatives of the Class defined herein pursuant to Rule 23(a) of the South Carolina

Rules of Civil Procedure, the Plaintiffs seek to recover monetary damages from the Defendants,

for negligence, gross negligence, recklessness, wantonness, willfulness, breach of fiduciary

duties, breach of express and implied warranties, with respect to their duties as a developer in

the development, marketing, sale of, administration, care, and maintenance and/or repair of The

Abbey, as well as their duties to design and construct The Abbey free from defects and in

accordance with all applicable building and dwelling codes.

5.      *Numerosity:* The Class is composed of in excess of sixty nine (69) persons or entities

geographically dispersed throughout the State of South Carolina and other states, the joinder of

whom in one action is impractical. When spouses and co-owners are considered, the Class is

expected to be in excess of sixty nine (69) persons or entities.

6.      *Typicality*: Plaintiffs Patricia Damico and Lenna Lucas' claims are typical of the claims of

the members of the Class, as all such claims arise out of Defendants' wrongful conduct in the

3

design, development, construction, reconstruction, marketing, selling, management and repair of The Abbey.

7.    *Adequate Representation*: Plaintiffs Patricia Damico and Lenna Lucas will fairly and adequately protect the interests of the members of the Class and has no interests antagonistic to those of the Class. Plaintiffs have retained counsel experienced in the prosecution of construction defect claims and complex litigation, including home defect claims and class actions.

8.    *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since, among other things, individual joinder of all members of the Class is impracticable. Should individual Class Members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court systems while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single Court.

9.    Defendants have acted on grounds generally applicable to the Class. Class certification is appropriate under South Carolina law because Defendants engaged in a uniform and common practice vis-à-vis each class member. All Class Members have the same legal right to, and interest in, redress for damages associated with the defective conditions existing within The Abbey.

4

10.    Plaintiffs Patricia Damico, Lenna Lucas, and the Class, who are all members of the Abbey, envision no unusual difficulty in the management of this action as a class action.

11.    Each Class Member has an interest of more than $100.00.

12.    The amount of money at stake for each Class Member is not sufficient for each member to hire their own counsel, forensic engineers and architects and bring their own action.

13.    The individual Plaintiffs are citizens and residents of Berkeley County, South Carolina, who at all times relevant hereto live in a residential community known as The Abbey at Spring Grove Plantation, located in Berkeley County, South Carolina.

14.    The Abbey is a section of the residential community, Spring Grove Plantation, located in Berkeley County, South Carolina and, upon information and belief, was owned, developed, marketed and constructed by the Defendants.

15.    The Defendants are, upon information and belief, corporations organized and existing under the laws of the State of South Carolina or some other state and are authorized to conduct business in this state, and have a principal place of business in Berkeley County or have conducted business in Berkeley County.

16.    Upon assuming the roles as stated above, the Defendants assumed the duties thereof to develop, construct, and market the property and sell parcels thereof to the general public.

17.    Furthermore, in assuming the roles stated above, the Defendants undertook to make certain that this Community was developed and constituted in a workmanlike fashion according to industry standards meeting all applicable codes, guidelines, restrictions, of any and all state, county, and municipal authorities.

5

18.    That pursuant to this marketing scheme, the Defendants extensively advertised to the general public and represented to the general public that *inter alia*, the property and homes built would be of the highest quality, with substantial amenities.

19.    This Court has jurisdiction over the parties and subject matter hereto.

20.    The construction of The Abbey was performed by one or more of the Defendants. The Defendants represented they were competent, knowledgeable and experienced in performing such construction work as to properly build The Abbey according to the normal standards of good and workmanlike practice in the construction field.

21.    Construction defects in The Abbey have recently been discovered. A recent inspection of the subject Homes resulted in the discovery of major problems and deficiencies including but not limited to the following:

   a.  Lack of proper foundation work;

   b.  Lack of proper foundation slabs;

   c.  Structural damage to the homes;

   d.  Water damage resulting from defects;

   e.  Improper grading and drainage;

   f.  Improper roofing; and

   g.  Improper windows and installation of some.

22.    Defendant Lennar Carolinas, LLC (hereinafter referred to as "Lennar") is a corporation organized and existing under the laws of the State of South Carolina and, at all times relevant hereto, was authorized to and did conduct business in the State of South Carolina, County of

6

Berkeley for the purpose of planning, developing, marketing, owning, maintaining, leasing, selling, and constructing the homes in a manner for sale to the public.

23.    Upon information and belief, the above-identified Lennar Defendant was, in various capacities, individually and collectively engaged in the planning and developing of the Project, and contracted with various entities for the design of the Project.

24.    The Defendant, Spring Grove Plantation Development, Inc. (hereinafter SGPD), upon information and belief, is a corporation organized and existing under the laws of the State of South Carolina and is authorized to conduct business in this State; upon information and belief, this Defendant was the initial owner/developer and seller of the neighborhood.

25.    The Defendant, Manale Landscaping, LLC (hereinafter Manale), upon information and belief, is a corporation organized and existing under the laws of the State of South Carolina and is authorized to conduct business in this State; this Defendant is a landscaping business that provided landscaping and grading at The Abbey.

26.    The Defendant, Super Concrete of SC, Inc. (hereinafter Super Concrete), upon information and belief, is a corporation organized and existing under the laws of the State of South Carolina and is authorized to conduct business in this State; this Defendant is a concrete contracting business that provided concrete, flatwork, driveways, walkways, and foundation slabs at The Abbey.

27.    The Defendant, TJB Trucking/Leasing, LLC (hereinafter TJB), upon information and belief, is a limited liability company organized and existing under the laws of the State of South Carolina and is authorized to conduct business in this state; this Defendant is a business that provided grading and pads at The Abbey.

7

28.     The Defendant, Southern Green, Inc. (hereinafter Southern Green), upon information and belief, is a corporation organized and existing under the laws of the State of South Carolina and is authorized to conduct business in this state; this Defendant is a landscaping business that provided landscaping and grading at The Abbey.

29.     The Defendant, Paragon Site Constructors, Inc. (hereinafter Paragon), upon information and belief, is a corporation organized and existing under the laws of the State of South Carolina and is authorized to conduct business in this State; Paragon performed site preparation and/or grading work for the building pads at the lots now known as The Abbey that is the subject of this litigation.

30.     The Defendant, Civil Site Environmental, Inc. (hereinafter referred to as "CSE") is a corporation organized and existing under the laws of the State of South Carolina and is authorized to conduct business in this State; CSE served as the professional civil engineer and designer for the development of The Abbey neighborhood and provided civil drawings for Phase I and Phase II of the development of the lots now known as The Abbey.

31.     The Defendant, Rick Bryant (hereinafter referred to as "Bryant") is a citizen and resident of the County of Berkeley, State of South Carolina; Bryant is a former employee of Spring Grove who undertook certain work and/or provided labor and materials to the project now known as The Abbey neighborhood.

32.     At the time of the incidents giving rise to the Plaintiffs' Complaints, Defendants Lennar, SGPD, Manale, Super Concrete, TJB, Southern Green, Paragon, CSE, and Bryant acted by and through its agents, contractors, and employees for the purpose of carrying on its business and

8

therefore, is liable for the negligent acts of its agents, contractors, and employees under the theory of *respondeat superior*.

33.    Defendant Lennar commenced to design, construct, develop, and sell the single family homes in The Abbey to, among others, the Plaintiffs in this action, and marketed and sold units in The Abbey despite the fact that they have been put on notice of numerous construction and design defects within the subject neighborhood and without disclosing those defects to any of the homeowners, including the Plaintiffs as well as new homeowners.

34.    The Abbey is a neighborhood development started by Defendant SGPD; it was then sold to Defendant Lennar, who then took control over the development of the neighborhood and hired contractors.

35.    By investigation of the subject structures, premises, roads, and property, the homeowners and/or Plaintiffs learned that said subject structures, premises, roads, and property have been deficiently designed and have significant construction defects. Construction was improperly performed and will have to be completely removed and replaced. The design, grading deficiencies, and construction to the subject structures and property include, but are not limited to, the following;

- a. Water accumulation on the property of the Plaintiffs and homeowners;

- b. Improper grading of the property of the Plaintiffs and homeowners;

- c. Improper installation of drainage pipes;

- d. Deterioration of the subject structures due to the drainage issues;

- e. Improper foundation;

- f. Improper flashing; and

9

g. Water intrusion.

36.    As a direct and proximate result and consequence of the numerous construction, design, installation, and implementation of the above defects, the Plaintiffs have and will continue to spend substantial sums of money for the repairs and reconstruction of the structures, property, and roads and will be subject to loss of use, enjoyment, and depreciation of value of their property.

37.    Due to the actions of the Defendants, as stated above, the Plaintiffs are facing significant damage repairs, deteriorating property, significant and immediate expenses for investigation, destructive testing, and an analysis of construction defects, repairs defects, grading defects, drainage problems, damages deterioration, and a generally overall dilapidated condition which is the direct and proximate result of defective construction, management, maintenance, and abandonment of generally accepted fiduciary principles and/or duties on the part of the Defendants.

38.    In connection with the Project, the Developer Defendants all became and/or acted as subsidiaries, parents, partners, associates, agents, affiliate, co-joint venturers, servants, instrumentalities and/or alter ego entities of each other and are responsible to the Plaintiffs herein for the condition of the Project and the damages set forth herein.

39.    The Developer Defendants conducted business in connection with the Project by and through the use and control of subservient entities, and all of these entities in fact manifested no separate interest of their own, and demonstrated an amalgamation of corporate interests, entities, and activities so as to blur the legal distinction between any members of that group of corporations, shareholders, officers, agents, partners, employees, and assets.

10

40.     The Defendants listed above including Lennar, SGPD, Manale, Super Concrete, Southern Green, TJB, Paragon, CSE, and Bryant (hereinafter referred to collectively as the "Contractor Defendants") provided labor, materials, goods, and services in connection with the construction of The Abbey at Spring Grove Plantation as contractors, subcontractors, consultants, or independent contractors, or which manufactured, fabricated, and/or otherwise provided construction and building materials, equipment and goods for use in connection with the construction of the Project; and these entities provided labor, materials, goods, and services associated with the original construction of the Project, and the work of each of these Defendants was deficient and defective and resulted in damages to the Plaintiffs as set forth below.

41.     All Defendants were instrumental in carrying out duties and actions relating to the construction of the Project, and each of these defendants had independent duties under South Carolina law to perform their duties in a good and workmanlike manner and in accordance with applicable building codes and accepted building practices.

## JURISDICTION

42.     Personal jurisdiction is vested and exists in the Court of Common Pleas, County of Berkeley, State of South Carolina, and venue is proper in the County of Berkeley, State of South Carolina, by virtue of, among other things, the fact that the property which is the subject matter of the Complaint is located in Berkeley County, South Carolina, and the great majority of the activities relating to the Project and the claims herein occurred in this jurisdiction.

## BACKGROUND

43.     The Plaintiffs repeat and reallege their allegations in all of the paragraphs set forth above as if set forth herein verbatim.

11

44.      Plaintiffs are informed and believe that the Developer Defendants engaged contractors to construct the Project including 69 properties, and related facilities and amenities, collectively known as The Abbey at Spring Grove Plantation, which were thereafter substantially completed, and contained various homes. The Developer Defendants, by and through various instrumentalities and alter-egos and other Defendants were the original developers of the Project and/or are liable for the actions of the original Developer of the project.

45.      The Developer Defendants directed and oversaw those listed as Defendants herein and contractors including the Contractor Defendants herein who performed insufficient, shoddy, negligent work which failed to comply with applicable building codes and industry standards, all of which has contributed to and resulted in the premature deterioration and/or failure of the structures and building systems in the Project.

46.      The Developer Defendants created and controlled numerous and various of the Defendant entities for the sole purpose of the planning, development, design, construction, management, purchase, sale of units, and other activities solely relating to the Project which is the subject of this action.

47.      There would exist a broad element of injustice and fundamental unfairness of the acts of the Developer Defendants, and each of them individually, were not regarded as the acts of one another.

48.      The Defendants began the process of constructing the homes by engaging and directing the actions of the various contractors and/or subcontractors named as Defendants herein, and participated in the negligent, deficient, and shoddy workmanship which ignored and/or covered up design and construction defects then in existence and, thereafter, placed the

12

units into the stream of commerce for sale, which they did sell to the general public and, in particular, to the current owners who are members of the Association.

49.     At the time the homes were offered for sale and placed into the stream of commerce by the Developer Defendants, the units contained numerous defects and/or property damage which has been recently and is currently being discovered by Plaintiffs, all as a direct and proximate result of an investigation initiated by Plaintiffs, as a direct and proximate result of defects and deficiencies heretofore hidden and concealed through the acts and omissions of the Developer Defendants.

50.     The Developer Defendants and the Contractor Defendants, and each and every other above-captioned Defendant knew or should have known of the existence of the said building defects and deficiencies and property damage, which were latent and unknown to the Plaintiffs.

51.     These latent building defects have, unbeknownst to Plaintiffs, regularly resulted in water damage to the buildings and property damage and continue to do so through the date of this filing.

52.     The latent building defects and property damage have regularly resulted in the deterioration and failure of the structures and building systems, along with the attendant resulting actual, incidental, consequential and special damages, and continue to do so through the date of this filing.

53.     The Plaintiffs suffered damages when the Developer Defendants put these homes into the stream of commerce and continue to be damaged through the date of this filing.

54.     The Developer Defendants were engaged in a joint venture, partnership, or other legal or de facto relationship with each other.

13

55.     The Developer Defendants caused, directed, participated in, or acted in willful, reckless, heedless, negligent and grossly negligent disregard of their collective and respective acts and omissions in the planning, development, design, construction, management and sale of the units in the Project, all as more fully described herein.

56.     The Developer Defendants represented to the public over the internet and through various publications and other media that they, by and through their various affiliates, entities, venturers, and agents referenced herein, were qualified, experienced, and would in fact be directing, managing, and otherwise facilitating the construction and selling of the units, and these representations were relied upon by the Plaintiffs.

57.     These collective and respective wrongful acts and omissions of the Developer Defendants and such other Defendants as set forth in the causes of action below, represent unfair trade practices and have resulted in substantial deterioration and/or failure of structures and building systems, building deficiencies, actual, incidental, special and consequential damages and loss of use. Remedying the above wrongful acts will result in actual, incidental, consequential, and special damages including loss of use to the Plaintiffs and its members, and entitle Plaintiffs and its members to punitive damages and attorney's fees. Further, these wrongful acts and omissions have directly and proximately caused substantial diminution in value, both pre- and post-repair.

58.     The acts and omissions of the Defendants were contrary to the duties they owed, individually and collectively, to the Plaintiffs and actually caused damages to the Plaintiffs including, but not limited to, damages which did not result from the acts and omissions of other

14

defendants and including, but not limited to, damages other than damages which resulted in physical injury or damage to tangible real and personal property in connection with this Project.

## AS A FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Negligence and Gross Negligence)

59.    The Plaintiffs repeat and reallege their allegations in all of the paragraphs set forth above as if set forth herein verbatim.

60.    Defendants, and each of them, owed a duty to Plaintiffs to act in a manner compliant with the reasonable standard of care, good faith, and fair dealing recognized under South Carolina law, and Defendants violated this duty to the Plaintiff and were negligent and grossly negligent, careless, reckless, willful and wanton in one or more of the following particulars:

a. In failing to properly design, construct, develop and repair the homes;

b. In failing to comply with the applicable Building Codes of the County of Berkeley and the State of South Carolina;

c. In failing to comply with the applicable Fire and Safety Codes of the County and of Berkeley and the State of South Carolina;

d. In failing to properly supervise the project developer entities and individuals, project architects and engineers, as well as contractors, subcontractors, suppliers and/or agents or employees of any of them in connection with the planning, development, design and construction of the homes offered for sale to the public;

e. In manufacturing, fabricating, preparing for the incorporation into a residential building, reviewing, approving, procuring, and incorporating into the construction of this project such items which were defective, deficient, inferior, inadequate, unsafe, dangerous, inappropriate for the use intended, noncompliant with approved design or design intent, non-compliant with applicable codes and standards in the industry, and otherwise improper for use in the project including, but not limited to, standard systems, grading, HVAC systems, windows, roofs, mechanical systems, plumbing systems, drainage systems, and sewer line systems without appropriate clean-out piping and/or other issues; electrical systems and equipment, interior and exterior drywall and other substrate and sheathing

15

material, windows, insulation, roofing, waterproofing systems, and other building materials and supplies, finishes, and other items relating to the construction and ultimate use of this residential project;

f.  In designing, constructing, marketing, selling, homes and/or property with defective windows;

g.  In designing, constructing, marketing, selling, homes and/or properly with inadequate flashing;

h.  In designing, constructing, marketing, selling, homes and/or property with inadequate roofs;

i.  In designing, constructing, marketing, selling, homes and/or property with inadequate water barriers;

j.  In designing, constructing, marketing, selling, homes and/or property without weather proof building envelopes and exteriors;

k.  In designing, constructing, marketing, selling, homes and/or property which were defective, deficient, inadequate, unsafe, dangerous, or otherwise non-compliant with codes and standards;

l.  In placing defective and inferior construction into the stream of commerce;

m.  In placing defective and inferior manufactured systems, equipment, building materials and other products into the stream of commerce;

n.  In failing to permit and facilitate a proper evaluation of the condition of the Project prior to and during the process of offering homes and other property for the use and sale to the general public and, further, to obstruct and/or hinder efforts to conduct a proper evaluation of the Project by intended purchasers or users;

o.  In misrepresenting the condition of the homes, common elements, garages and other property to prospective and actual purchasers and other users, and in making representations in negligent and/or intentional disregard of whether these representations were false or inaccurate;

p.  In failing to undertake sufficient actions to develop a plan for repairs and otherwise failing to make adequate repairs to conditions at the project which were unsafe, dangerous, or otherwise not in compliance with applicable building codes or other authorities or standards of care;

16

q. In negligently and/or intentionally covering up deficiencies prior to construction of the units and other property for sale or use by the general public;

r. In failing to determine accurate information required, failing to disclose the absence of such information, as well as negligently and/or intentionally providing misleading and inaccurate information regarding the proper level of financial capitalization and reserve funding required for the operations, maintenance, and repairs required by The Abbey for the Project and individual home owners;

s. In failing to act as reasonable persons would in circumstances then and there prevailing and in such other failures as will be shown during discovery and at trial.

61.    Said failures above-described, as well as the Defendants' gross negligence, willfulness, and reckless disregard for the rights of Plaintiff and others, have actually and proximately caused damages to Plaintiffs, and the Defendants are liable to the Plaintiffs in an amount of actual, incidental, consequential, special, and punitive damages in an amount to be determined by the trier of fact and any attempts in any contractual agreement for the limitation or disclaimer of warranties, or any other waiver or other limitation, are null, void, unenforceable, and subject to rescission as a matter of law.

## AS A SECOND CAUSE OF ACTION
### (Negligence-Developers)

62.    The Plaintiffs repeat and reallege their allegations in all of the paragraphs set forth above as if set forth herein verbatim.

63.    The damages and injuries caused to the Plaintiffs and their property, are the direct and proximate result of the negligence, willfulness, wantonness, carelessness and recklessness of the Defendants SGPD and Lennar in one or more of the following particulars to wit:

a. In their capacity as developers in defectively overseeing the construction of the subject structures;

b. In failing to properly inspect, repair, and maintain the structures;

17

c. In negligently effecting repairs to the structures, premises, property and roads;

d. In failing and omitting to exercise that degree of care and caution of a reasonably prudent manager of a homeowners association;

e. In failing and omitting to retain proper experts and to effectively inspect and repair the structures, premises, property, and roads; and

f. In placing their interests ahead of the owners thereby breaching their fiduciary duty.

64.     As a direct and proximate result of the above stated negligent actions on behalf of Defendants SGPD and Lennar, the Plaintiffs and similarly situated homeowners will have to spend substantial sums of money for the repairs and reconstruction of their property and structures will be subject to loss of use, enjoyment, and depreciation of value of the property.

## AS A THIRD CAUSE OF ACTION
### (Against the Developer Defendants and Contractor Defendants)
### (Negligent Misrepresentation)

65.     The Plaintiffs repeat and reallege their allegations in all of the paragraphs set forth above as if set forth herein verbatim.

66.     These reports and representations were actually published and presented for information to the general public by these Defendants, and these representations were actually received by, and relied upon by, the prospective and actual purchasers of the townhomes at the Project.

67.     At the time of the sale of the homes, Plaintiffs were not aware of the falsity of the representations or the lack of investigation and lack of candor by these Defendants in connection with the reports.

18

68.     Plaintiff subsequently determined that the representations made by these Defendants were false and that these Defendants failed to exercise due care, not only in failing to discover defects in the project, but also in failing to communicate information about the true condition of the Project. As a result of its justifiable reliance on the representations, reports, and other documents presented by these Defendants, Plaintiffs and its members have assumed control over the Project and/or purchased units, and have thereby suffered pecuniary losses in an amount to be determined by the trier of fact.

69.     As a direct and proximate result of its justifiable reliance on numerous false representations made by these Defendants in connection with the Project, Plaintiffs have suffered, and these Defendants are liable to the Plaintiff for, actual, incidental, consequential, and special damages, all in an amount to be determined by the trier of fact and any attempts in any contractual agreement for the limitation or disclaimer of warranties, or any other waiver or other limitation, are null, void, unenforceable, and subject to rescission as a matter of law.

## AS A FOURTH CAUSE OF ACTION
### (Against the Contractor Defendants and the Developer Defendants)
### (Breach of Implied Warranty)

70.     The Plaintiffs repeat and reallege their allegations in all of the paragraphs set forth above as if set forth herein verbatim.

71.     The design, construction, development and sale of the units by these Defendants contained as a matter of law implied warranties of good faith and fair dealing, fitness for use merchantability, habitability, and workmanship with respect to construction, which warranties were not effectively disclaimed under South Carolina law.

19

72.    The Developer Defendants and Contractor Defendants through their acts and/or omissions, have breached the aforesaid implied warranties, which directly, actually, and proximately caused and resulted in damage which the Plaintiffs have suffered and continues to suffer in an amount to be determined by the trier of fact.

73.    These Defendants are therefore liable to the Plaintiffs for actual, incidental, special, and consequential damages in an amount to be determined by the trier of fact and any attempts in any contractual agreement for the limitation or disclaimer of warranties, or any other waiver or other limitation, are null, void, unenforceable, and subject to rescission as a matter of law.

## AS A FIFTH CAUSE OF ACTION
### (Against the Developer Defendants and the Contractor Defendants)
### (Breach of Implied Warranty of Fitness of Habitability)

74.    The Plaintiffs repeat and reallege their allegations in all of the paragraphs set forth above as if set forth herein verbatim.

75.    That the Defendants impliedly warranted as a matter of law that the subject Residences which they built were habitable and fit for their intended uses.

76.    That this implied warranty was breached by the Defendants and the work was performed in a manner below ordinary workmanship and the subject Residences were neither habitable nor fit for their intended use causing damage to Plaintiffs.

## AS A SIXTH CAUSE OF ACTION
### (Against the Developer Defendants and the Contractor Defendants)
### (Breach of Implied Warranty of Fitness for Particular Purpose)

77.    The Plaintiffs repeat and reallege their allegations in all of the paragraphs set forth above as if set forth herein verbatim.

20

78.     The Defendants had the duty to develop, market and construct the subject Residences according to industry standards and in a good and workmanlike manner, and an implied warranty of fitness attached to the sales of these homes.

79.     At the time of the sale of the subject Residences to the Plaintiffs, the Defendants had reason to know if any or all parts of the construction of the subject residences were not completed according to industry standards and in a good workmanship manner.

80.     The Defendants, at the time of the sale of the subject Residences to the Plaintiffs, had reason to know that the Plaintiffs were relying on the skill and/or judgment of the Defendants to properly construct the homes and adjacent facilities according to industry standards and in a good and workmanlike manner.  Plaintiffs, in fact, relied on the Defendants' skill and judgment.

81.     The Defendants did not properly construct the subject homes and facilities according to industry standards and in a good and workmanlike manner, causing major defects to Waverly Townhomes.

82.     As a result of the Defendants' breach of its implied warranties, Plaintiffs have suffered physical damages.

## AS A SEVENTH CAUSE OF ACTION
### (Against the Developer Defendants and Contractor Defendants)
### (Breach of Implied Warranties as to the Project's Development and Construction)

83.     The Plaintiffs repeat and reallege their allegations in all of the paragraphs set forth above as if set forth herein verbatim.

84.     These Defendants engaged in conduct during the period of development and construction of the Project which gave rise to duties and implied warranties to the public including, but not limited to, tenants, purchasers and other users of the Project, in that by their

21

conduct these Defendants placed the Project, which constitutes defective, deleterious, and dangerous property, into the stream of commerce.

85.      The placement of the Project into the stream of commerce by these Defendants, contained as a matter of law implied warranties of fitness, merchantability, workmanship and habitability, which warranties were not effectively disclaimed pursuant to South Carolina law.

86.      As a direct and proximate result of the breaches of the above-described implied warranties by these Defendants, their affiliates, associates, sham entities, and/or joint venturers, whether named or unnamed on any documents transferring interest in the Project, the Plaintiffs has suffered and will continue to suffer damages, injuries and other losses.

87.      These Defendants are therefore liable to the Plaintiffs for actual, incidental, special, and consequential damages in an amount to be determined by the trier of fact and any attempts in any contractual agreement for the limitation or disclaimer of warranties, or any other waiver or other limitation, are null, void, unenforceable, and subject to rescission as a matter of law.

## AS A EIGHTH CAUSE OF ACTION
### (Individual Liability as to the Developer Defendants)

88.      The Plaintiffs repeat and reallege their allegations in all of the paragraphs set forth above as if set forth herein verbatim.

89.      As a direct and proximate cause and result of the acts and omissions of these Defendants as aforesaid, Plaintiffs have been damaged, and these Defendants are liable to the Plaintiffs for actual, incidental, consequential, and special damages in an amount to be determined by the trier of fact and any attempts in any contractual agreement for the limitation or disclaimer of warranties, or any other waiver or other limitation, are null, void, unenforceable, and subject to rescission as a matter of law.

22

## AS AN NINTH CAUSE OF ACTION
### (Individual Liability as to the Contractor Defendants)

90.     The Plaintiffs repeat and reallege their allegations in all of the paragraphs set forth above as if set forth herein verbatim.

91.     As a direct and proximate cause and result of the acts and omissions of these Defendants as aforesaid, Plaintiffs have been damaged, and these Defendants are liable to the Plaintiffs for actual, incidental, consequential, and special damages in an amount to be determined by the trier of fact and any attempts in any contractual agreement for the limitation or disclaimer of warranties, or any other waiver or other limitation, are null, void, unenforceable, and subject to rescission as a matter of law.

## AS A TENTH CAUSE OF ACTION
### (Against the Developer Defendants and the Contractor Defendants)
### (Violation of the S.C. Unfair Trade Practices Act, S.C. Code § 39-5-10, *et seq.*)

92.     The Plaintiffs repeat and reallege their allegations in all of the paragraphs set forth above as if set forth herein verbatim.

93.     These Defendants' construction and the subsequent offering and sale of the units, along with the issuance of the property condition reports and other representations to tenants, purchasers, and the public at large, constituted the conduct of trade and commerce within the meaning of S.C. Code Section 39-5-20(a).

94.     The Defendants, and each of them, through their acts and omissions including, but not limited to, the following particulars, conducted unfair and deceptive practices within the meaning of S.C. Code Section 39-5-140(a) and 27-31-430, S.C. Code of Laws as amended:

> a. In failing to properly evaluate the plans and specifications for the Project prior to construction;

23

b. In failing to conduct a reasonable inquiry into the conditions existing at the Project and marketing the homes, common elements, and other property at the Project to the public for sale and use;

c. In failing to repair the latent defects about which these Defendants were or should have been aware;

d. In failing to carry out duties owed to prospective and actual purchasers and other members of the public in their special relationships of trust and confidence by virtue of their role in the process of offering these units, common elements, and other property for sale and use by the general public, as design, construction, and sellers according to South Carolina law.

e. In attempting to disclaim implied warranties of merchantability and habitability in documents contrary to South Carolina law;

f. In failing to provide any additional consideration for these purported efforts to waive implied warranties of merchantability and habitability;

g. In failing to properly investigate the true conditions of the Project and putting them into the stream of commerce;

h. In making false representations as to the condition of the Project and/or representations as to the condition of the Project in reckless disregard as to the truth of the representations;

i. In failing to analyze relevant data and conditions to determine adequate capital reserves for maintenance and operation of the Project by future owners and users;

95.    The conduct of the Defendants as described above was knowing and willful, and Defendants knew or should have known that such conduct was a violation of S.C. Code Section 39-5-20 and 27-31-430.

96.    Plaintiffs are persons within the meaning of S.C. Code Section 39-5-140(a) and Plaintiffs have suffered actual, direct, and proximate damages as a direct and proximate result of unfair and deceptive acts of these Defendants, in an amount to be determined by the trier of fact.

24

97.    The aforesaid acts of Defendants impact the public interest in that they constituted unfair and deceptive acts and have the potential for repetition and, in fact, occurred at each and every sale of the units of this Project and, as such, are acts which can, have and will affect the public at large by repetition.

98.    These unfair and deceptive acts are acts which will affect members of the public, beyond the parties to the above-described transactions, in the form of other consumers who may be injured by purchasing townhomes by the Defendants and/or rely upon the actions and representations of these Defendants thereby placing members of the public in danger of physical and other injuries.

99.    Plaintiffs are entitled to be compensated pursuant to S.C. Code Section 39-5-140(a) for the above-described actual, incidental, consequential, and special damages, as well as costs, interest, and attorney's fees, and to recover three (3) times these damages by reason of the knowing and willful nature of the unfair and deceptive acts by Defendants and any attempts in any contractual agreement for the limitation or disclaimer of warranties, or any other waiver or other limitation, are null, void, unenforceable, and subject to rescission as a matter of law.

## AS A ELEVENTH CAUSE OF ACTION
### (Against the Developer Defendants)
### (Breach of Contract)

100.    The Plaintiffs repeat and reallege their allegations in all of the paragraphs set forth above as if set forth herein verbatim.

25

101.    These Defendants entered into oral and/or written contractual arrangements with Plaintiffs relating to the representation in a purchase and sale transaction, as well as the purchase of units and other property within the Project, and the right to beneficial use of common elements and amenities to be established, coordinated, and managed by these Defendants, and these Defendants received consideration which was adequate and accepted pursuant to the terms of the Defendants' offer of ownership, goods, and/or services which were accepted by the Plaintiff.

102.    Based upon the terms of their contractual agreements, along with the duties which flowed from these Defendants by virtue of the Master Deed and By-laws, real estate agency or other agreements for representation by these Defendants, and the purchase agreements for individual homes and other property interests at the Project, these Defendants owed a contractual obligation to Plaintiffs which required that these Defendants ensure that the Project was safe, habitable, code-compliant, and in a condition consistent with these Defendants' representations prior to turning over control of the Project to the home owners.

103.    In breach of these contractual obligations and in breach of the Master Deed, By-laws, and real estate agency and other agreements, these Defendants failed to make a full investigation of conditions at the Project, and failed to disclose the existence of the known defects at the Project, which constitutes a breach of contract and violation of the terms of the Master Deed and By-laws by these Defendants as described above.

104.    In addition to and accompanying this breach of these contractual and other obligations, these Defendants made material representations which were false as more fully described in this Complaint which the Plaintiffs relied upon to the Plaintiffs detriment.

26

105.    As a direct and proximate result thereof, Plaintiff have and will continue to suffer, and the actual, incidental, special, and consequential damages and other injuries including, but not limited to, the damages and injuries associated with the acts and omissions which constituted the breach of contract by these Defendants as aforesaid, all in an amount to be determined by the trier of fact.

106.    These Defendants are therefore liable to the Plaintiffs for the actual, incidental, special, and consequential damages and other injuries as aforesaid in an amount to be determined by the trier of fact and any attempts in any contractual agreement for the limitation or disclaimer of warranties, or any other waiver or other limitation, are null, void, unenforceable, and subject to rescission as a matter of law.

## AS AN TWELFTH CAUSE OF ACTION
### (Against the Developer Defendants)
### (Violation of the Residential Property Condition Disclosure Act)

107.    The Plaintiffs repeat and reallege their allegations in all of the paragraphs set forth above as if set forth herein verbatim.

108.    These Defendants were engaged in a joint venture, partnership, or some other form of business venture or association including, but not limited to, the formation of a Limited Liability Company, in connection with the development and construction of The Abbey at Spring Grove Plantation.

109.    The Developer Defendants did so place the homes into the stream of commerce for sale to the general public and to the members of The Abbey in particular.

110.    At all times relevant to this cause of action the Developer Defendants were "owners" as that term is used within S.C. Code Ann. § 27-50-10 *et seq.,* referred to as the "South Carolina

27

Residential Property Condition Disclosure Act" (referred to in the remainder of this cause of action as the "Act").

111.    The Developer Defendants failed to furnish to the purchasers of the townhome units a written disclosure statement in conformity and compliance with S.C. Code Ann. § 27-50-40.

112.    These Defendants failed to inform the sellers of the homes of their obligations under the Act and had reasonable cause to suspect that the information, if any, supplied by the sellers to the individual purchasers was inherently false, incomplete, and misleading.

113.    Upon information and belief, notwithstanding the above-described failures of these Defendants, and each of them, knowingly violated and/or failed to perform the duties described in§ 27-50-40.

114.    The nature of the defects that were undisclosed in violation of§ 27-50-40, prevented and/or limited any inspection performed by the Plaintiff to uncover or discover the said defects.

115.    As a direct and proximate result of these Defendants' violations of their respective and collective duty to furnish written disclosure to the purchasers as required by§ 27-50-10, *et seq.*, the Plaintiff has suffered, and these Defendants are liable to the Plaintiff for, actual, incidental, consequential, and special damages, along with costs, interest, and attorney's fees pursuant to the remedies set forth in the Act, all in an amount to be determined by the trier of fact, and any attempts in any contractual agreement for the limitation or disclaimer of warranties, or any other waiver or other limitation, are null, void, unenforceable, and subject to rescission as a matter of law.

## AS A THIRTEENTH CAUSE OF ACTION
(Against Developer Defendants)
(Alter Ego Liability and Piercing the Corporate Veil)

116.    The Plaintiffs repeat and reallege their allegations in all of the paragraphs set forth above as if set forth herein verbatim.

117.    The Developer Defendants, by and through various instrumentalities and alter-egos and other Defendants were the original developers of the Project, and the Developer Defendants combined and joined together through various instrumentalities and alter egos to facilitate to process of building the homes.

118.    The Developer Defendants created and controlled numerous and various entities. These Defendants created and controlled these sham entities for the sole purpose of enabling it to transact a portion of its business under an alternate corporate guise and to avoid claims such as those set forth herein. These entities, and each of them, were merely a facade for the operations of these Defendants to achieve their financial goals and to perpetrate the activities more particularly described herein. The subservient entities or individuals in fact manifested no separate interest of their own and that there was an amalgamation of corporate interests, entities, and activities so as to blur the legal distinction between these Defendants and the sham corporations, shareholders, officers, agents, partners, employees, assets, and each of them.

119.    These Defendants created entities which were created to perform single purpose functions in order to effectuate the sole will of these Defendants in purchasing, developing, leasing, and/or selling the homes. Despite the creation of these sham entities and despite the sham entities appearing in name only on some contracts, letters, deeds, and/or other documents, these Defendants actively and directly participated in the development, purchase,

29

sale, management, leasing, and/or operations of the Project, and in fact put the same into the stream of commerce.

120.     These Defendants created and controlled numerous and various of the Defendant entities for the sole purpose of the planning, development, design, construction, management, purchase, sale of homes, and other activities solely relating to the Project which is the subject of this action.

121.     These Defendants directed and oversaw the Contractor Defendants herein who performed insufficient, shoddy, negligent work which failed to comply with applicable building codes and industry standards, all of which has contributed to and resulted in the premature deterioration and/or failure of the structures and building systems in the Project.

122.     There would exist a broad element of injustice and fundamental unfairness if the acts of these Defendants, and each of them individually, were not regarded as the acts of one another.

123.     At the time the homes were offered for sale and placed into the stream of commerce by these Defendants, the homes contained numerous defects and/or property damage which has been recently and is currently being discovered by Plaintiffs, all as a direct and proximate result of an investigation initiated by Plaintiffs, as a direct and proximate result of defects and deficiencies heretofore hidden and concealed through the acts and omissions of these Defendants.

124.     The Developer Defendants and the Contractor Defendants, and each and every other above-captioned Defendant knew or should have known of the existence of the said building defects and deficiencies and property damage, which were latent and unknown to the Plaintiffs.

30

125.    These latent building defects have, unbeknownst to Plaintiffs, regularly resulted in water intrusion into the buildings and property damage and continue to do so through the date of this filing.

126.    The latent building defects and property damage have regularly resulted in the deterioration and failure of the structures and building systems, along with the attendant resulting actual, incidental, consequential and special damages, and continue to do so through the date of this filing.

127.    The Plaintiffs suffered damages and injuries when these Defendants put these units into the stream of commerce and continue to be damaged and injured through the date of this filing.

128.    As a direct and proximate result thereof, these Defendants are liable to the Plaintiffs for actual, incidental, consequential, special and punitive damages, all in an amount to be determined by the trier of fact, and any attempts in any contractual agreement for the limitation or disclaimer of warranties, or any other waiver or other limitation, are null, void, unenforceable, and subject to rescission as a matter of law.

129.    WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

    a. Enter judgment in favor of the Plaintiffs and against all Defendants, jointly and severally, in an amount to be determined for actual, incidental, consequential, special, and punitive damages;

    b. Find that the Defendants have engaged in unfair trade practices and knowingly did so thereby entitling Plaintiffs to treble damages;
    c. Award attorneys' fees and costs to the Plaintiffs; and

    d. Award such other and further relief as the Court may deem just and proper.

*[Signature Page to Follow]*

31

HAYES LAW FIRM, LLC

John C. Hayes, IV, Esquire
180 Meeting Street, Suite 330
Charleston, SC 29401
Phone: (843) 805-7003
Fax (843) 573-7388
jhayes@hayeslaw.org

and

Michael J. Jordan
Steinberg Law Firm, LLP
118 Goose Creek Blvd.
P.O. Box 1028
Goose Creek, SC 29445
Phone: 843-572-0700
mjordan@steinberglawfirm.com

*Attorneys for Plaintiffs*

November 23, 2015
Charleston, South Carolina